ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARIMAR PÉREZ RIERA<br><br>Recurrida<br><br>v.<br><br>CONSEJO DE TITULARES Y JUNTA DIRECTORES COND. MARYMAR, ET ALS.<br><br>Recurrentes | KLRA202300480 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor (DACO) Oficina Regional de San Juan<br><br>Querella Núm. C-SAN-2022-0010431<br><br>Sobre: Ley de Condominios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2023.

Comparece la parte recurrente del título, denominada en conjunto Condominio Marymar, mediante un recurso de revisión judicial, y nos solicita la revocación de la *Resolución Sumaria*, dictada y notificada por el Departamento de Asuntos del Consumidor (DACO o Agencia) el 20 de julio de 2023.[1] En la determinación administrativa, el DACO declaró "ha lugar" la *Querella* número C-SAN-2022-0010431 instada por la parte recurrida, la licenciada Marimar Pérez Riera (Lcda. Pérez Riera). Como consecuencia, ordenó al recurrente a convocar al Consejo de Titulares para llevar nuevamente a votación los mismos asuntos atendidos en la Asamblea Ordinaria celebrada el 17 de noviembre de 2021,[2] ocasión en que, sin derecho a ello, se privó a la recurrida de voz y voto. Además, intimó al Condominio Marymar a producir para la Lcda. Pérez Riera el historial de pago de todos los titulares y la eximió de contribuir a los honorarios y gastos legales incurridos.

---

[1] Apéndice, págs. 1-16.
[2] Véase, Apéndice, págs. 109-111; además, págs. 124-128; 129-132.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos el dictamen recurrido.

I

Surge del expediente ante nosotros que, el 14 de diciembre de 2021, la Lcda. Pérez Riera, titular del PH del condominio, presentó la *Querella* del epígrafe.[3] Alegó, en esencia,[4] que el 17 de noviembre de 2021, el Condominio Marymar celebró una Asamblea Ordinaria, en la que se le prohibió participar plenamente a través de su voz y voto, al amparo del Artículo 51 de la Ley de Condominios, *infra*. Es decir, se le imputó a la recurrida albergar deudas de mantenimiento de más de tres meses. No obstante, la recurrida explicó que, a esa fecha, se encontraba pendiente de resolución la *Querella* C-SAN-2021-0009712 ante el DACO.[5] En esta, entre otras cosas, la Lcda. Pérez Riera denunció la negativa del Condominio Marymar a acordar un plan de pago razonable, según solicitado.[6] Aun cuando al momento de incoar dicha reclamación administrativa, la Lcda. Pérez Riera estaba al día con el pago de las mensualidades que le correspondían, la recurrida anticipó que tendría deudas por concepto de mantenimiento y derramas. Dicho pleito culminó el 20 de mayo de 2022, cuando el DACO emitió una *Resolución en Reconsideración*,[7] a favor de la Lcda. Pérez Riera, en la que instruyó a las partes a producir el referido plan de pago. Por consiguiente, como a la fecha de la Asamblea Ordinaria de 17 de noviembre de 2021 el procedimiento administrativo se encontraba

---

[3] Apéndice, págs. 244-249; 250-258, con anejo a la pág. 259. El DACO notificó la *Querella* el 5 de enero de 2022.

[4] La Lcda. Pérez Riera renunció a cuatro causas de acción; a saber: […] (ii) "Le imponga sanciones al presidente de la Junta de Directores por prohibirle a la Querellante que participe y vote **a sabiendas** de que esta estaba impugnando la deuda en DACO y de que la consecuencia de la impugnación a DACO era que no tenía que pagar hasta finalizar el caso en DACO; (iii) Le imponga sanciones al administrador por prohibirle a la Querellante que participe y vote, **a sabiendas** de que esta estaba impugnando la deuda en DACO; […] (v) Le imponga sanciones por temeridad a la Junta de Directores por negarle la información que la Querellante solicita, a sabiendas de que es información administrativa perteneciente a todos los titulares; (vi) Ordene la imposición de daños por angustias y humillación en la suma de $5,000.00; […]" (Énfasis en el original.)

[5] Apéndice, págs. 628-374, presentada el 12 de agosto de 2021. Refiérase también a las págs. 641-644, *Contestación a Querella* C-SAN-2021-0009712.

[6] Apéndice, pág. 362. El plan de pago fue solicitado el 27 de mayo de 2021. Véase, además, págs. 415-416; 417-418.

[7] Apéndice, págs. 658-664.

pendiente, en la *Querella* de autos, la recurrida solicitó que el cónclave se declarara nulo, ya que no podía impedírsele ejercer su derecho al voto.

Relacionado a lo anterior, de la Convocatoria se desprende la siguiente expresión: "Al PH impugnar en DACO los planes de pago de las derramas del 26 de mayo de 2021 y 20 de julio de 2021 y los pagos de mantenimiento, la unidad PH no tiene que pagar su porción de las derramas y mantenimiento hasta que DACO tome una determinación final."[8] Además, ante la fundada sospecha de que se le trató selectivamente, la Lcda. Pérez Riera solicitó al DACO que se le ordenara al recurrente la entrega del historial de pago de los titulares, así como el desglose de los gastos legales incurridos y la exención de contribuir a estos, conforme a lo dispuesto en el Artículo 65 de la Ley de Condominios, *infra*.

El Condominio Marymar presentó su alegación responsiva, fechada el 10 de febrero de 2022.[9] Negó que hubiera un caso de impugnación de deuda ni una resolución administrativa o judicial que eximiera a la recurrida de la obligación continua de contribuir a los gastos del inmueble, según establece el Artículo 59 de la Ley de Condominios, *infra*. Afirmó que la recurrida adeudaba tres plazos de cuota de mantenimiento y cinco de derramas. Reconoció que no existía un plan de pago, por lo que aseguró que actuó conforme a la ley al proscribir la participación de la Lcda. Pérez Riera en la Asamblea Ordinaria. Además, indicó que, el 20 de enero de 2022, envió por correo electrónico la información peticionada sobre los pagos de los titulares.[10]

Luego de varios trámites interlocutorios, innecesarios de pormenorizar, el Condominio Marymar[11] y la Lcda. Pérez Riera[12]

---

[8] Véase, Apéndice, pág. 110, acápite (j) (3).

[9] Apéndice, págs. 260-271, con anejos a las págs. 272-274.

[10] Igualmente, los querellados Javier Méndez y Mara Marcos, en conjunto, instaron una *Moción de Desestimación*. Apéndice, págs. 275-285. El otro querellado, Momentum Management Group Corp., por su parte, incoó su *Contestación a Querella*. Apéndice, págs. 286-294. Posteriormente, este último presentó una *Moción de Desestimación por Academicidad*, en la que acotó que, desde marzo de 2022, no fungía como Agente Administrador del condominio. Apéndice, págs. 602-605. Refiérase también a la nota al calce número 4 de este dictamen.

[11] Apéndice, págs. 301-310, con anejos a las págs. 311-340.

[12] Apéndice, págs. 606-627, con anejos a las págs. 628-759.

presentaron sendas peticiones sumarias para la resolución abreviada del pleito. Asimismo, la recurrida se opuso al pedimento del recurrente;[13] y este reiteró su solicitud, así como la desestimación de la *Querella*.[14]

Justipreciados los escritos, el DACO dictó la *Resolución Sumaria* recurrida,[15] en la cual consignó los siguientes hechos probados e incontrovertidos, a los que hemos impartido énfasis:

1. La Querellante es la titular del apartamento PH del Condominio Marymar Condado el cual está sometido al régimen de propiedad horizontal y le aplica la Ley de Condominios, Ley 129 de 16 de agosto de 2020, conocida como la Ley de Condominios de Puerto Rico (en adelante "Ley de Condominios" o "Ley Núm. 129-2020").

2. **La Querellante solicitó un plan de pago a la Junta de Directores el 27 de mayo de 2021 el cual le fue denegado**.

3. **El 12 de agosto de 2021 la Querellante impugnó ante este Departamento la negativa de la Junta de Directores de otorgarle un plan de pago mediante la *Querella* presentada número C-SAN-2021-0009712**.

4. **Al momento de presentar la *Querella* C-SAN-2021-0009712, la Querellante estaba al día con el pago de las mensualidades que le correspondía**.

5. La *Querella* C-SAN-2021-0009712 fue resuelta mediante *Resolución en Reconsideración* emitida el 20 de mayo de 2022 por este Departamento resolviendo Ha Lugar a la moción de reconsideración presentada por la Querellante.

6. El 3 de noviembre de 2021, el presidente de la Junta de Directores envió Convocatoria al Consejo de Titulares para una Asamblea Ordinaria a celebrarse el 17 de noviembre de 2021.

7. En la Convocatoria, el presidente de la Junta de Directores, Raphael Ramseyer, expuso que "Al [la Querellante] impugnar en DACO los planes de pago... la unidad PH no tiene que pagar su porción de las derramas y mantenimiento hasta que DACO tome una determinación final."

8. La Junta de Directores admitió que, como consecuencia de haber impugnando (*sic*) ante el DACO la negativa de aprobarle el plan de pago solicitado, la Querellante iba a

---

[13] Apéndice, págs. 343-361, con anejos a las págs. 362-430.
[14] Apéndice, págs. 485-495, con anejos a las págs. 496-601.
[15] Véase nota al calce número 1 de esta *Sentencia*.

tener deudas pendientes por concepto de mantenimiento acumulando desde el final de agosto 2021. La Junta de Directores admitió lo mismo con relación a deudas pendientes por concepto de derramas.

9. El 17 de noviembre de 2021 se celebró la Asamblea Ordinaria del Consejo de Titulares. La Querellante asistió.

10. **En la Asamblea Ordinaria, el presidente de la Junta de Directores, Raphael Ramseyer, le prohibió a la Querellante su derecho de voz y voto aduciendo a que la Sra. Pérez-Riera adeudaba más de 3 meses de mantenimiento**.

11. Desde el 2 de diciembre de 2021, y en múltiples ocasiones posteriores, **la Querellante solicitó al presidente y tesorero de la Junta de Directores el "aging" o historial de pago de todos los titulares** para conocer cuántos meses de atraso habían tenido en determinado momento los demás titulares.

12. **El 17 de diciembre de 2021 se le niega a la Querellante acceso al "aging" o historial de pago de todos los titulares** sustentando su decisión en que esa era la recomendación de la abogada del Consejo de Titulares, la licenciada Sandra Velilla, donde esta indicó que: "... *El historial de pago de un titular es un reporte interno (subsidiario) de la contabilidad del Condominio que ilustra de manera cronológica la conducta de pago de un titular. Por tratarse de información cuya divulgación no lo requiere la Ley ni los documentos constitutivos del Condominio, el titular tiene la expectativa de que su historial de pago no será divulgada [sic] a terceros y solo será usada para la preparación de los estados y reportes principales que sí deben estar a la disposición de los titulares.*"[16]

13. El 6 de mayo de 2022 la Junta de Directores aceptó que le iba a dar acceso a la Querellante a la información solicitada, pero que iba a tomar tiempo. Según el correo electrónico de la parte Querellada a la Querellante, se le informó que "*se está trabajando en el cierre de los primeros tres meses del 2022, hasta el 31 de marzo de 2022. Al tener la misma, se podrá proveer la información solicitada.*"

14. **Los querellados nunca proveyeron acceso a la información solicitada.**

15. Este Departamento toma conocimiento administrativo de [la] *Querella* C-SAN-2020-0006352 resuelta en *Resolución [Sumaria]* del 9 de julio de 2021 declarada Ha

---

[16] Véase, Apéndice, págs. 408-409.

Lugar por falta de proveerle información a la Querellante. Tras incumplimientos de los Querellados post *Resolución [Sumaria]* del DACO, este Departamento demandó a la Junta de Directores y Consejo de Titulares de Marymar Condado en el Tribunal de Primera Instancia el 21 de abril de 2022 en caso SJ2022CV03113. Tras *Sentencia* del Tribunal de Primera Instancia el 28 de junio de 2022, el 3 de noviembre de 2022 el Tribunal de Primera Instancia emitió *Orden* y concedió 5 días a los Querellados para producir la información de estados bancarios so pena de arresto por desacato civil.[17]

16. El 14 de diciembre de 2021, la Querellante presentó la *Querella* de epígrafe.

17. **El Departamento toma conocimiento administrativo de que esta *Querella* marca la cuarta ocasión en que la Querellante se ve obligada a radicar querellas en contra de los Querellados para que le provean acceso a información financiera o administrativa perteneciente a todos los titulares. En todos los casos, la Querellante ha prevalecido**.

Estas querellas son las siguientes:

• En el año 2020 la Junta de Directores le negó información financiera, información relacionada con los cobros del seguro del huracán María, informes del contratista de las áreas comunales, Resolución Corporativa de un titular, entre otra. El DACO emitió *Resolución Sumaria* del 9 de julio de 2021 en *Querella* número C-SAN-2020-0006352 ordenando a la Junta de Directores del Condominio entregarle a la [Q]uerellante la información solicitada.

• El DACO demandó a los Querellados en *Petición de Hacer Cumplir Orden* ante el Tribunal de Primera Instancia el 21 de abril de 2022 en caso SJ2022CV03113. A su vez, el Tribunal de Primera Instancia emitió una *Sentencia* el 28 de junio de 2022 ordenando a producir la información que alegaron los Querellados que estaba en el "Dropbox", particularmente, en lo relevante, los estados bancarios de las cuentas del [C]ondominio.

• En el año 2017 la Junta de Directores le negó a la Querellante copia de las actas de reuniones de Junta de Directores. El DACO emitió *Resolución* el 23 de abril de 2018 en *Querella* número C-SAN-2017-0000442 ordenando a la Junta de Directores del Condominio entregarle a la [Q]uerellante la información solicitada.

• En el año 2016 la Junta de Directores le negó información sobre una inspección hecha en área comunal del Condominio a la Querellante. El DACO emitió *Resolución* el 27 de abril de 2016 en *Querella* número SJ0015164 ordenando a la Junta de Directores del

---

[17] Véase, Apéndice, págs. 714-720; además, a las págs. 721-722; 723-725; 726.

Condominio a entregarle a la Querellante la información solicitada.

Al tenor de los enunciados citados, el DACO concluyó que a la recurrida la albergaban las protecciones del Artículo 65 de la Ley de Condominios, *infra*, el cual prevalecía sobre las disposiciones del Artículo 51 del estatuto, *infra*. En consecuencia, justipreció que la prohibición de la participación y el voto de la Lcda. Pérez Riera en la Asamblea Ordinaria impugnada era contrario a la Ley de Condominios, lo que tornó el cónclave en uno nulo. De igual modo, el DACO favoreció a la recurrida y ordenó al Condominio Marymar a producir el historial de pago de todos los titulares. Finalmente, en atención al ordenamiento atinente, eximió a la Lcda. Pérez Riera de contribuir a los gastos legales incurridos en el procedimiento.

Inconforme, el Condominio Marymar solicitó a la Agencia que reconsiderara su decisión.[18] El DACO denegó de plano la petición, por lo que, el 12 de septiembre de 2023, la parte recurrente acudió ante este foro intermedio y señaló la comisión de los siguientes errores:

**PRIMER ERROR:** Estamos ante un caso que es Académico.

**SEGUNDO ERROR:** Resulta inconsecuente volver a celebrar la asamblea ordinaria de 2021 cuando el voto de la querellante no tendrá el efecto de alterar el resultado de los acuerdos adoptados por el Consejo de Titulares, resultando inconsecuente y fútil el remedio ordenado por el DACO.

**TERCER ERROR:** La *Resolución Sumaria* del DACO es contraria a su propia orden dictada en el caso C-SAN-2021-0009712, a la más reciente decisión del Tribunal [de Apelaciones] en el caso *Kiara Vélez Figueroa v. Junta de Directores del Condominio Balcones de Carolina II*, Caso KLRA202100676 y al Artículo VI, Sección 1, del Reglamento del Condominio Marymar, todos los cuales fueron ignorados por el DACO en su *Resolución Sumaria*.

**CUARTO ERROR:** El DACO dictó una resolución que obra en contra de la política pública de la Ley de Condominios, del Reglamento del Condominio Marymar y la jurisprudencia dictada por nuestro Tribunal Supremo [al] resolver que las disposiciones del Artículo 65 de la Ley de Condominios prevalecen sobre las disposiciones del Artículo 51 por lo que un titular que adeuda 3 o más plazo de obligaciones comunales y que impugna ante el DACO la negativa de la Junta de Directores de concederle un plan de pago, no pierde su derecho al voto.

---

[18] Apéndice, págs. 17-39, con anejos a las págs. 40-132. Véase, *Oposición a Reconsideración* de la recurrida en el Apéndice, págs. 133-155, con anejos a las págs. 156-243.

**QUINTO ERROR:** Erró el DACO al adjudicar como una admisión de la Junta de Directores y del Presidente lo consignado en la convocatoria de la asamblea de liberar a la querellante de su obligación de pago y, apoyado en ello, resolver que la querellante tenía derecho a votar en la asamblea.

**SEXTO ERROR:** El DACO ignoró prueba sustancial que presentó la Recurrente y que obra en el expediente administrativo que, de haberla considerado, habría desestimado la querella de la Recurrida sobre solicitud de documentos. En su lugar, el DACO incluyó determinaciones de hecho ajenas a las alegaciones 42 a 45 de la querella y procedió, de forma arbitraria, *ultra vires* y en violación al debido proceso de ley, a[l] determinar hechos y a[l] resolver, vía este caso, una controversia que se encuentra *sub judice* en el caso C-SAN-2022-0010479.

**SÉPTIMO ERROR:** No procede conceder a la querellante el remedio que establece el Artículo 65 por cuanto corresponde revocar en su totalidad la Resolución Sumaria dictada por la agencia.

El 12 de octubre de 2023, la Lcda. Pérez Riera presentó su alegato. Con el beneficio de ambas posturas, resolvemos.

**II**

**A**

Es norma asentada que las decisiones de los organismos administrativos merecen la mayor **deferencia judicial**, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Al momento de "revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia." *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Luego, "[e]n caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener la que seleccionó la agencia, y no sustituir su criterio por el de esta." *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). A su vez, "[e]l expediente administrativo constituirá la *base exclusiva* para la decisión de la agencia en su procedimiento adjudicativo y para la revisión judicial ulterior. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9675, establece el alcance de la revisión judicial de una determinación administrativa, como sigue:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Se ha pautado por el Tribunal Supremo de Puerto Rico que "**los procesos administrativos y las determinaciones de hechos de las agencias est[á]n cobijados por una presunción de regularidad y corrección**", por lo que "la revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de manera arbitraria, caprichosa o ilegal." (Énfasis nuestro.) *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Es decir, si quiere prevalecer**,** la parte recurrente está obligada a presentar la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006). En ese sentido, la parte que recurre judicialmente una decisión administrativa tiene el peso de la prueba para demostrar que las determinaciones de hechos no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004). La presunción de corrección de la decisión administrativa cederá en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Acerca de la interpretación de los estatutos que ejecutan las agencias, aun cuando las conclusiones de derecho se revisan en todos sus aspectos, los tribunales no podemos descartar libremente las conclusiones

e interpretaciones de la agencia. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009), que cita a *Martínez v. Rosado*, 165 DPR 582 (2005). "Igualmente, **merece gran deferencia y respeto la interpretación razonable de un estatuto que hace el organismo que lo administra** y del cual es responsable." (Énfasis nuestro.) Íd. La Máxima Curia ha opinado que incluso en casos dudosos, en los que la interpretación de la agencia no sea la única razonable, la determinación de esta merece deferencia sustancial. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Esta deferencia solo cederá cuando la decisión afecte derechos fundamentales, resulte irrazonable o conduzca a la comisión de una injusticia. *Costa, Piovanetti v. Caguas Expressway*, 149 DPR 881, 889 (1999), refrendado en *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*; *Com. Seg. P.R. v. Antilles Ins. Co.*, 145 DPR 226, 233 (1983).

**B**

La Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), prima el ordenamiento jurídico sobre la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. A este estatuto, le siguen la escritura matriz y el reglamento del condominio de que se trate. *Con Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 413-414 (2022). La primacía del estatuto implica que cualquier cláusula o regla claramente contraria a sus disposiciones sería nula. Íd., pág. 414; *Brown III v. J.D. Cond. Playa Grande*, 154 DPR 225, 238-239 (2001). Del mismo modo, nuestro Tribunal Supremo ha resuelto que las disposiciones del estatuto especial son de carácter mandatorio y no supletorio. *Con Tit. Centro Int'l Torre II v. PRCI*, *supra*; *Condominio First Federal Savings v. LSREF2 Island Holdings*, 202 DPR 934, 940 (2019).

De otro lado, es conocida la obligación de todo titular de un apartamento de contribuir con los gastos comunes para el adecuado sostenimiento del inmueble sometido al régimen de propiedad horizontal. *D.A.Co. v. Cond. Castillo del Mar*, 174 DPR 967, 973 (2008). El Artículo 59

de la Ley de Condominios, 31 LPRA sec. 1923d, establece la obligatoriedad de los condóminos de contribuir para cubrir los gastos de administración y conservación. Añade lo siguiente:

> **Ningún titular podrá librarse de contribuir a tales gastos** por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca, ni **por haber incoado una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así la autorice**. (Énfasis nuestro.) *Id.*

La inobservancia de esta obligación repercute incluso en la voz y voto del titular. En armonía con lo anterior, el Artículo 51 de la Ley de Condominios, 31 LPRA sec. 1922w, estatuye, en lo pertinente, lo siguiente:

> **La representación en las asambleas del Consejo de Titulares** en los que exista por lo menos un apartamento dedicado a vivienda, la podrán ejercer solamente personas mayores de edad que, a su vez, sean **titulares que no adeuden tres (3) o más cuotas de mantenimiento, y/o derramas y/o multas vencidas por más de sesenta (60) días, y/o primas del seguro matriz** […]
>
> .     .     .     .     .     .     .     .
>
> **Aquellos titulares que adeuden tres (3) o más plazos de cuotas, y/o derramas** y/o cuotas especiales y/o multas con pago vencido de sesenta (60) días o más, y/o alguna prima vencida del seguro comunal por cualquiera de los apartamentos de los que sea titular**, quedarán temporalmente privados de ejercer su derecho al voto, prestar su consentimiento o expresarse en las asambleas del Consejo de Titulares hasta tanto satisfagan la deuda en su totalidad** o el Tesorero certifique que el titular está al día en el plan de pago aprobado por la Junta de Directores con anterioridad a la asamblea en cuestión. (Énfasis nuestro.) *Id.*

De otra parte, el Artículo 65 de la Ley de Condominios, 31 LPRA sec. 1923j, provee las causas de acción necesarias y los términos para que los titulares de apartamentos puedan impugnar las acciones y omisiones de Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares. El término prescriptivo dependerá de la causa en sí, como sigue:

> **Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no**

**estuvo presente en el momento en que se llegó a tal acuerdo o determinación**.

En el caso de que la **acción de impugnación** de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, **constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años**. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley. (Énfasis nuestro.) 31 LPRA sec. 1923j.

Cónsono con la importancia de prestar las cuotas de mantenimiento y otras cargas comunales, la disposición establece que **el titular que impugne tendrá que demostrar que no tiene ningún tipo de deuda**. Sin embargo, el estatuto consigna, a su vez, la salvedad del *requisito de no deuda*, "**cuando la impugnación sea para cuestionar la deuda que alegadamente tiene**." (Énfasis nuestro.) *Id*. Además, adjudicada la pugna, el Artículo 65 de la Ley de Condominios, *supra*, provee también que "[e]l titular que prevalezca en cualquier reclamación de su querella **no tendrá que contribuir a los honorarios o gastos legales** en que incurra la Junta o el Consejo de Titulares, ni a la multa que, en su caso, pudiera imponérsele a la parte querellada." (Énfasis nuestro.) *Id*.

**C**

Es norma reconocida que la academicidad es una de las doctrinas que acotan los límites de la función judicial, toda vez que el dictamen emitido no surtiría efecto práctico entre las partes. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 73 (2017). Este precepto legal exige que exista una controversia real en todas las etapas del proceso judicial, tanto en la inicial como en la apelativa. Siendo así, una vez se determina que la controversia es académica, los foros judiciales debemos abstenernos de considerarla en sus méritos, ya sea por imperativo constitucional (ausencia de *caso o controversia*) o por autolimitación judicial. *Bhatia Gautier v. Gobernador*, *supra*, pág. 73; *Asoc. de Periodistas v. González*, 127 DPR 704, 719 (1991). Por ello, se requiere el examen de los eventos anteriores,

próximos y **futuros**, para auscultar si la controversia subsiste con el transcurso del tiempo. *Presidente de la Cámara v. Gobernador,* 167 DPR 149, 157 (2006).

Sin embargo, se han reconocido un puñado de excepciones de la doctrina de academicidad; a saber: (1) **cuando se plantea una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial**; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente; (3) cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes; y (4) cuando la controversia se torna académica para un miembro en un pleito de clase certificado, mas no para los otros miembros de la misma clase. *Bhatia Gautier v. Gobernador*, *supra*, págs. 73-74; *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 933 (2011); *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253, 281 (2010).

Con respecto a la primera excepción antes citada, nuestro Alto Foro ha opinado lo siguiente:

> [L]a "excepción de recurrencia" es utilizada cuando estamos ante una controversia o polémica que tiene la probabilidad de repetirse y de evadir la revisión judicial. Esto **incluye situaciones donde la controversia se ha vuelto académica debido a circunstancias de tiempo relacionadas con la naturaleza de la acción o los procesos**. Cónsono con lo anterior, la excepción de recurrencia trata sobre aquellas instancias en las que **es razonable pensar que la misma controversia puede surgir en el futuro y que nuevamente se tornará académica antes de que algún tribunal pueda adjudicarla**.
>
> Para determinar si se configura la excepción de recurrencia deben considerarse los factores siguientes: **(1) la probabilidad de recurrencia de la controversia; (2) la identidad de las partes involucradas en el procedimiento, y (3) la probabilidad de que el asunto eluda revisión judicial**. La probabilidad de recurrencia es el factor primario para evaluar si una determinación del tribunal promoverá finalidad. Si hay una probabilidad razonable de que una controversia se repita el tribunal debe considerar el asunto planteado. **Sobre la identidad de las partes, no es necesario que al repetirse la controversia se vean afectadas las mismas partes**, sino que puede surgir entre distintos protagonistas. A su vez, para determinar si el asunto es **propenso a continuar evadiendo la revisión judicial, se considera la naturaleza de la controversia**. Este requisito se cumple en aquellas **controversias que por su índole son de corta duración**, aunque pudiera haber otras razones, además de brevedad cronológica. (Énfasis nuestro y citas

omitidas.) *Pueblo v. Díaz, Rivera*, 204 DPR 472, 482-483 (2020).

**III**

En los primeros tres señalamientos de error, el Condominio Marymar plantea, en esencia, que la causa de acción es académica. Arguye que el remedio provisto es inconsecuente, toda vez que, en el cónclave anulado, los acuerdos adoptados se ejecutaron, el presupuesto aprobado se extinguió y la directiva electa culminó su término; así como que el voto de ,la Lcda. Pérez Riera no cambiaría los resultados obtenidos en la votación. Añade que la determinación es contraria a las normas del régimen.[19]

En este proceso, uno de los remedios concedidos por DACO a la Lcda. Pérez Riera consistió en la declaración de nulidad de la Asamblea Ordinaria de 17 de noviembre de 2021 y, en consecuencia, la orden de celebrar una nueva Asamblea Ordinaria para dirimir los mismos asuntos que se discutieron en aquella ocasión. Ello así, porque el Condominio Marymar privó ilegalmente a la recurrida de su derecho a expresarse y a votar.

Si bien el paso del tiempo puede aparentar que el asunto es académico, como esbozamos antes, la doctrina de academicidad comprende una excepción muy importante para este caso: la excepción de recurrencia. En la causa de autos, estamos ante una controversia con la patente probabilidad de repetirse y, por su naturaleza, lograr evadir la revisión administrativa. Las asambleas ordinarias se celebran anualmente y es razonablemente probable que un condómino tenga pendiente de resolución un caso de impugnación de cuota, derrama, multa o, como en este caso, un plan de pago por encontrarse en morosidad, y a quien se le prive de su derecho inalienable de voz y voto. Recuérdese que la identidad de las partes no tiene que ser igual, basta que los protagonistas de la disputa sean la junta de directores de turno y un condómino en las mismas

---

[19] En específico, el Condominio Marymar plantea que la decisión es contraria al Artículo VI, *Obligations of the Unit Owners*, Sección 1, *Assessments*, de los "By-Laws of the Marymar Condado Condominium"; véase, Apéndice, págs. 550-552.

circunstancias que la recurrida. Precisamente, debido a la probabilidad de recurrencia, corresponde al juzgador considerar el asunto y finiquitarlo. Tampoco es académica la solicitud de información en poder del Condominio Marymar, cuya petición puede caer nuevamente en oídos sordos. Por consiguiente, resolvemos que el caso ante nuestra consideración no es académico, por virtud de la excepción de recurrencia.

Nótese, también, que el decreto de nulidad implica la inexistencia del acto y conlleva un impedimento de producir efecto alguno. Por lo tanto, las decisiones adoptadas en la Asamblea Ordinaria de 2021 adolecen de eficacia, por lo que deben sujetarse a un nuevo proceso de votación, para que, como mínimo, sean objeto de ratificación o reversión. Advertimos que la negativa del Condominio Marymar a acatar el mandato del DACO, lo expondría a la imposibilidad de aplicar ninguno de los acuerdos allí adoptados contra la recurrida, independientemente de que esta los haya o no cumplido. Ello así, porque la determinación del DACO redunda en que la Asamblea Ordinaria de 17 de noviembre de 2021 es nula *ab initio* y, por tanto, la Lcda. Pérez Riera no tendría que estar obligada a someterse a ninguna de las decisiones adoptadas mediante un proceso inexistente y sin el beneficio de sus aportaciones ni su voto.

Por igual, no coincidimos con la apreciación del recurrente sobre que el DACO contravino decisiones administrativas y apelativas. El recurrente alude a una determinación del DACO en el caso C-SAN-2021-0009712,[20] tomada por otro funcionario de la Agencia, y una *Sentencia* de un panel hermano en un caso entre otras partes,[21] cuyos hechos son distinguibles de los que nos conciernen. En todo caso, ambas determinaciones son meramente persuasivas, no vinculantes. En cuanto al reglamento del

---

[20] Apéndice, págs. 581-585; 590-591.

[21] *Kiara Vélez Figueroa v. Junta de Directores del Cond. Balcones de Carolina II*, KLRA202100676, consolidado con KLRA202100681, *Sentencia* de 28 de febrero de 2022, Apéndice, págs. 453-462. En ese caso, el panel fraterno revocó la declaración de nulidad del DACO de la asamblea de 3 de marzo de 2021, en que no se permitió la participación de la Sra. Vélez Figueroa debido a la morosidad de esta en el pago de una multa. Cabe señalar que, si bien la condómina impugnó la multa ante la Agencia, esta presentó tardíamente el recurso administrativo por lo que ya su causa de acción estaba prescrita. No habiendo un caso de impugnación pendiente ni satisfecho el pago, la Junta de Directores podía privar a la Sra. Vélez Figueroa de su participación en el cónclave.

condominio, este se encuentra en una jerarquía inferior a la Ley de Condominios. Por ende, cualquier disposición contraria al estatuto es nula.

En los señalamientos de error cuarto y quinto, el Condominio Marymar sostiene que el DACO incidió al resolver que las disposiciones del Artículo 65 de la Ley de Condominios prevalecen sobre las del Artículo 51 del estatuto especial. Indica que la Lcda. Pérez Riera no impugnó la deuda en el caso C-SAN-2021-0009712. A su vez, arguye error en las determinaciones de hechos 6 y 7 de la *Resolución Sumaria*. En particular, niega las admisiones que allí se le imputan, las cuales, por ser presuntamente contrarias al ordenamiento legal, deben tenerse por no puestas.

Reproducimos una de las alegaciones de la Lcda. Pérez Riera en su *Querella* de 12 de agosto de 2021, C-SAN-2021-0009712, como sigue: "La [recurrida] va a tener deudas pendientes por concepto de mantenimiento acumulado al <u>final</u> de agosto [de] 2021 lo cual está **impugnando** por la negativa de la Junta de Directores de aprobarle el plan de pago solicitado."[22] Entonces, el 3 de noviembre de 2021 se convocó a la Asamblea Ordinaria. Entre la información incluida en el documento, en el párrafo (j) (3), se aludió al referido procedimiento administrativo y se apostilló que, en virtud de este, la recurrida no tenía que realizar los pagos correspondientes hasta que el DACO adjudicara las controversias de las partes. Llegado el día del cónclave, a la Lcda. Pérez Riera se le impidió ejercer su derecho a voz y voto, bajo el fundamento de que tenía atrasos en el pago de derramas y mantenimiento en exceso de tres meses.

Según reseñado, en la determinación impugnada, el DACO decretó la nulidad de la Asamblea Ordinaria de 17 de noviembre de 2021, debido a la privación de los derechos de voz y voto de la recurrida. La Agencia razonó que el Artículo 65 del estatuto otorgaba unas protecciones excepcionales al titular que impugnaba legítimamente una deuda de

---

[22] Véase, Apéndice, pág. 365, acápite 12. (Énfasis y subrayado en el original.)

cuotas, derramas o multas. Así, pues, debido a la importancia del derecho al voto en asamblea, coligió que dicho amparo se extendía a este.

Somos del criterio que la negativa de la Junta de Directores a proveer el plan de pago solicitado por la recurrida, obligación que emana de la propia Ley de Condominios,[23] incidió en que la Lcda. Pérez Riera incurriera en morosidad, la cual impugnó oportunamente, por lo que el asunto se encontraba *sub judice* al tiempo en que se celebró la Asamblea de noviembre de 2021. Es razonable concluir que la recurrida se encontraba protegida por la excepción del *requisito de no deuda* del Artículo 65 de la Ley de Condominios, no solo a los efectos del procedimiento administrativo en sí, sino también en el ejercicio de su derecho de voz y voto en las asambleas, ya que la deuda imputada era precisamente la controversia en un proceso de impugnación. Asimismo, el Artículo 59 del estatuto claramente dispone que un titular no podrá librarse de contribuir a los gastos de mantenimiento o derramas por haber incoado una reclamación administrativa o judicial "por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así la autorice", mas no a casos de impugnación de dichas cuotas o derramas, a los que específicamente aplica la excepción del Artículo 65 de la Ley de Condominios.

Ciertamente, al realizar un análisis integral de la Ley de Condominios, estimamos correcta la interpretación del estatuto impartido por el DACO, la cual, además, goza de deferencia sustancial. No encontramos razones para variar el examen hermenéutico realizado por la Agencia, ya que el mismo protege derechos fundamentales, es razonable y evita la comisión de una injusticia.

Con respecto al sexto error, sobre que el DACO impropiamente incursionó en otro caso en trámite, en referencia al C-SAN-2022-0010479,

---

[23] Refiérase al inciso (l) del Artículo 53, *Poderes y Deberes del Director o Junta de Directores*, de la ley de Condominios, 31 LPRA sec. 1922y (l), que reza: "Establecer un plan de pago para aquellos titulares que demuestren no tener la capacidad económica para cumplir con los plazos de cuotas, cuotas especiales, derramas, y/o multas con pago vencido de sesenta (60) días o más."

no le asiste la razón al recurrente. Independientemente de las alegaciones en el caso aludido, lo cierto es que, en la causa del epígrafe, la Lcda. Pérez Riera solicitó remedios al DACO para que el Condominio Marymar proveyera la información solicitada, en torno al historial de pago de todos los titulares. La Lcda. Pérez Riera expresó en su *Querella*, lo siguiente: "Le ordene al presidente y [al] administrador darle a la [recurrida] la información relacionada con los pagos de los titulares, para poder constatar si hubo trato selectivo al prohibirle el derecho al voto solamente a la [recurrida] cuando otros titulares puede que hayan estado morosos el 17 de noviembre de 2021."[24]

Contrario a lo alegado por el Condominio Marymar, el 20 de enero de 2022, este no cumplió a cabalidad con la petición de la recurrida.[25] Los escuetos documentos anejados distan en extremo de los provistos el 31 de julio de 2023.[26] En esa ocasión, un nuevo administrador, finalmente, proveyó la información detallada sobre el historial de pago y las penalidades impuestas a los titulares en el periodo desde enero de 2019 a mayo de 2023. Cabe señalar que no fue hasta la presentación de la *Oposición a Reconsideración* de la Lcda. Pérez Riera, fechada el 14 de agosto de 2023, que el DACO pudo advenir en conocimiento del cumplimiento de lo compelido. No obstante, la Agencia denegó de plano ponderar los méritos o deméritos de la petición de reconsideración del Condominio Marymar, así como de la oposición de la recurrida. El error no se cometió.

Por último, tampoco tiene razón el recurrente en su séptimo señalamiento de error. En este caso, toda vez que la Lcda. Pérez Riera ha prevalecido en todas las controversias planteadas y no renunciadas del procedimiento administrativo del título, la Ley de Condominios la exime de contribuir a los honorarios y gastos legales. Procede confirmar el dictamen administrativo en todas sus partes.

---

[24] Véase, Apéndice, pág. 258, acápite (iv).
[25] Véase, Apéndice, págs. 77; 78-80.
[26] Véase, Apéndice, págs. 156; 157-158; 159-243.

**IV**

Por los fundamentos expuestos, confirmamos la *Resolución Sumaria* recurrida.

**Notifíquese.**

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones